IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DAVID E. RODGERS**, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-4831-L** |
| | § | Bankruptcy Case No. 11-32632-sgj11 |
| **COLIN-G PROPERTIES, LTD;** | § | |
| **COLIN-G MANAGEMENT, LLC; and** | § | |
| **GERALD M. HOUSER**, | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Appellees' Motion to Dismiss Appeal (Doc. 5), filed January 2, 2013. After careful consideration of the briefs, the record on appeal, and the applicable law, the court **denies** Appellees' Motion to Dismiss Appeal (Doc. 5).

**I.     Procedural Background**

This bankruptcy appeal was brought by David E. Rodgers ("Rodgers" or "Appellant") against Gerald M. Houser ("Houser"), Colin-G Properties, Ltd. ("CGP"), and Colin-G Management, LLC ("CGM") (collectively "Appellees" of "Debtors"), who are joint debtors in the underlying bankruptcy proceeding. Before Appellees filed for bankruptcy, Rodgers obtained a state court judgment in February 2005 against three companies owned by Houser in the amount of $685,804.10, for injuries he sustained while employed by Appellees. On December 16, 2010, Rodgers obtained another state court judgment against Appellees in the amount of approximately $1.3 million, of which $420,000 was for attorney's fees, for fraudulently transferring assets with the intent to hinder,

delay, or defraud Rodgers from collecting on his personal injury judgment in violation of the Texas Uniform Fraudulent Transfer Act.

On April 19, 2011, Debtors filed for bankruptcy under chapter 11 of the bankruptcy code. On January 5, 2012, Debtors filed their first amended disclosure statement and plan of reorganization ("Plan") to which Rodgers objected. After a hearing, the bankruptcy court entered an order confirming the Plan and overruling Rodgers's objections. Although the confirmation order contained the court's findings of fact and conclusions of law ("findings and conclusions"), Rodgers moved on July 19, 2012, for the bankruptcy court to enter separate findings and conclusions. On July 27, 2012, the bankruptcy court entered separate findings and conclusions that are virtually identical to those contained in its prior confirmation order.

On August 10, 2012, Rodgers requested the bankruptcy court to make additional or amended findings and conclusions. On the same date, Rodgers filed a notice of appeal in which he indicated that he was appealing the order of confirmation. In his notice of appeal, Rodgers also noted that the time for the deadline to file his notice of appeal should be calculated from July 27, 2012, the date the bankruptcy court entered separate findings and conclusions. On August 21, 2012, the bankruptcy court denied Rodgers' request for additional or amended findings and conclusions.

On January 2, 2013, Appellees filed a Motion to Dismiss Appeal ("Motion"), contending that the court lacks jurisdiction to hear the appeal because Appellant failed to file timely a notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. Even if the court determines it has jurisdiction, Appellees contend that dismissal of the appeal is appropriate, based on 11 U.S.C. § 1127(b) and the equitable mootness doctrine, because Debtors' Plan has been substantially

**Memorandum Opinion and Order - Page 2**

consummated and the relief requested by Appellant would affect the success of the Plan or rights of third parties not before the court.

## II.  Analysis

### A.  Timeliness of Notice of Appeal

District courts have jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). A decision is considered final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). To be considered timely, a notice of appeal must be filed within 14 days of "the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a). If a notice of appeal is filed after a decision or order but before the judgment, order, or decree is entered, it is "treated as filed after such entry and on the day thereof." *Id.* If any party makes a timely motion under Rule 8002(c) to amend or make additional findings of fact under Rule 7052, to alter or amend the judgment under Rule 9023, for a new trial under Rule 9023, or for relief under Rule 9024, the time to appeal "runs from the entry of the order disposing of the last such motion outstanding." *Id.* 8002(c). "Failure to file a notice of appeal timely deprives the district court of jurisdiction" to consider the appeal. *In re Bayhi*, 528 F.3d 393, 401 (5th Cir. 2008). Because the requirement that a notice of appeal be timely filed is jurisdictional in nature, it cannot be waived. *Id.*

As already noted, Appellees contend that the court lacks jurisdiction to hear the present appeal because Appellant failed to file timely a notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. Appellees contend that the time to file a notice of appeal started to run from the bankruptcy court's July 16, 2012 confirmation order. Appellees maintain that Appellant's

July 19, 2012 motion to the bankruptcy court to make separate findings and conclusions did not toll the time to file a notice of appeal because the request in this regard does qualify as a request to amend or make additional findings of fact under Rule 7052 or any other type of motion under Rule 8002(c). Appellees further note the separate findings and conclusions entered by the bankruptcy court on July 27, 2012, in response to Appellant's July 19, 2012 motion, are identical to those included in the bankruptcy court's confirmation order. Although Appellant subsequently filed a motion on August 10, 2012, for additional and amended findings and conclusions, Appellees contend that it was also untimely for purposes of tolling the time to file a notice of appeal because it was not filed within 14 days of the confirmation order. Appellees therefore assert that Appellant's motion for additional and amended findings and conclusions did not toll the time to file a notice of appeal.

Appellant counters, based on Federal Rule of Civil Procedure 58, that "[t]he time period for appeal of the Bankruptcy court's judgment confirming the plan is calculated from the date the Court entered its findings of fact and conclusions of law in a separate document from the order confirming the plan." Appellant's Resp. 7. Appellant therefore maintains that the time to file a notice of appeal did not start to run from the bankruptcy court's July 16, 2012 confirmation order that included findings and conclusions but instead ran from the separate findings and conclusions subsequently entered by the bankruptcy court on July 27, 2012, pursuant to his request under Federal Rule of Bankruptcy Procedure 7052 and Federal Rules of Civil Procedure 52.

According to Appellant, because the bankruptcy court did not enter a judgment separate and apart from the findings and conclusions, the confirmation order was not technically entered in accordance with Rules 52 and 58. Appellant further asserts that the time to file a notice of appeal was extended because he made a timely request to the bankruptcy court for amended or additional

findings and conclusions. As to the timeliness of his motion for amended or additional findings and conclusions, Appellant contends that the court should treat his July 19, 2012 request to the bankruptcy court to enter separate findings and conclusions as a request for additional or amended findings and conclusions.

Regardless of whether the court treats Appellant's motion for separate findings and conclusions as one for additional or amended findings and conclusions, the court determines that the appeal is timely. As Appellant correctly notes, Federal Rule of Civil Procedure 58 applies to bankruptcy proceedings and requires, except in circumstances not present here, that a separate judgment be entered. *In re Seiscom Delta, Inc.*, 857 F.2d 279, 284 (5th Cir. 1988) ("Similarly to rule 58, Bankruptcy Rule 9021 requires that 'Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document.'"). Thus, even though the bankruptcy court's separate findings and conclusions are identical to those in the prior confirmation order, which appears to be final and appealable, the time to appeal from the confirmation order did not technically begin to run until a separate judgment was entered, and it is clear from the record that a judgment was not entered by the bankruptcy court in the underlying proceeding. *Id.* at 284-85.

In cases such as this, when "an appellant realizes that a final judgment has not been entered, or that there may be some doubt about it," the Fifth Circuit has said that the better practice is for the appellant to "take steps to obtain the entry of a certain final judgment, and then file a new notice of appeal." *Id.* Here, because Appellant apparently misunderstood the interplay between the bankruptcy and federal rules, he requested the bankruptcy court to enter separate findings and recommendations rather than requesting the entry of a separate judgment, which only served to further confuse matters. Notwithstanding this misstep, the court concludes, based on the reasoning

in *In re Seiscom Delta, Incorporated*, that Appellant's notice of appeal filed on August 10, 2012, was not untimely, and Appellant cannot be considered to have waived his right to appeal by not appealing within 14 days of the date that the confirmation order was entered because no judgment was separately entered by the bankruptcy court. *See id.* at 281-86.

    B.    **Equitable Mootness Doctrine**

Appellees contend that even if the court has jurisdiction over the appeal, the court should abstain from hearing it under the doctrine of equitable mootness. "Equitable mootness authorizes an appellate court to decline review of an otherwise viable appeal of a Chapter 11 reorganization plan, but only when the reorganization has progressed too far for the requested relief practicably to be granted." *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994). Thus, "[e]quitable mootness is a kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest." *In re Pac. Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009). Equitable mootness is prudential in nature, not jurisdictional. *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 (5th Cir. 2010).

Three factors are considered in determining whether an appeal of a confirmation plan is equitably moot: "(i) whether a stay has been obtained, (ii) whether the plan has been substantially consummated, and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *Id*. (internal citation and quotation marks omitted). No set weight is given to any of these factors. As explained by the Fifth Circuit, "a single prong may be determinative, but more often the first two are relevant only insofar as they affect the answer to the third question; if no stay has been obtained and the plan has been substantially consummated, the more likely the third prong indicates equitable mootness." *Id.* While substantial consummation

is considered a "momentous event," it is not necessarily fatal or dispositive of an appeal from a plan confirmation. *Id.* at 424-25 (quotation omitted). Abstention is appropriate, however, when the relief sought on appeal will likely unravel the confirmed plan. *Id.* at 425.

Because the doctrine of equitable mootness is based on equity, other equitable considerations, aside from the three aforementioned factors, may be relevant "such as the degree of prejudice to third parties and to some of the litigants, the arbitrariness of the ruling being appealed, etc." *Id*. at 425 n.4. In applying the equitable mootness doctrine, the court does so "with a scalpel rather than an axe" and "may fashion whatever relief is practicable instead of declining review simply because full relief is not available." *Id.* at 425 (quotation omitted). In determining whether the appeal is equitably moot, the court "scrutinize[s] each individual claim, testing the feasibility of granting the relief against its impact on the reorganization scheme as a whole." *Id.*(quotation omitted).

Based on the test for equitable mootness, Appellees contend that the court should abstain from hearing the instant appeal because: (1) no stay of the plan confirmation was sought or requested by Appellant; (2) the bankruptcy court found that the Plan has been substantially consummated; and (3) granting the relief requested by Appellant would require a complete unraveling of the Plan already confirmed and consummated. In addition, Appellees contend that the relief sought by Appellant (additional payments to satisfy in full a state court judgment obtained by Appellant) would require amendment or modification of the Plan, which is prohibited under the bankruptcy code because the Plan has been substantially consummated. Appellees' Mot. 8 (citing and quoting 11 U.S.C. § 1127(b)); Appellees' Br. 19-20. Appellees maintain that the Plan has been substantially consummated, as defined in 11 U.S.C. § 1101(2), because a number of actions has taken place in furtherance of the Plan's consummation. For support, Appellees rely on two orders in which the

**Memorandum Opinion and Order - Page 7**

bankruptcy court made the following findings, based on the pleadings on file, the motions, and after hearing testimony and statements by counsel:[*]

> (g) Sufficient funds have been delivered to the Chapter 13 Trustee for Mr. Rodgers' Chapter 13 creditors to be paid in full and those funds have in fact been disbursed to Mr. Rodgers' creditors;
>
> (h) CGP has obtained its exit financing with Alliance Bank and funded a large portion of the Debtors' Amended Plan. From this Exit Financing, CGP made the first payment of $250,000.00 to Chapter 13 Trustee on September 6, 2012 in accordance with the Confirmation Order;
>
> (I) In addition, CGP has made its first quarterly payment of $11,250.00 due under the Plan to the Chapter 13 Trustee for Mr. Rodgers;
>
> (k) By virtue of the evidence solicited during this proceeding, the Amended Plan has been substantially consummated as defined in 11 U.S.C. § 1101(2).

Order Granting Amended Motion to Determine Where Future Payments Due to David E. Rodgers Should be Sent and Finding Substantial Consummation (Bankr. Doc. 293 at 2).

> (g) CGP has obtained its exit financing with Alliance Bank to fund the Amended Plan, which Houser personally guaranteed, Houser has paid his first quarterly installment to his creditors in the total amount of $1,507.81, of which $1,228.08 was delivered to the Chapter 13 Trustee, who subsequently used such funds along with the funds paid by CGP to pay all of Rodgers' creditors in full;
>
> (I) by virtue of the evidence elicited during this proceeding, the Amended Plan has been substantially consummated as defined in 11 U.S.C. §1101(2).

Order Approving Motion to Determine Where Future Payment Due to David E. Rodgers Should be Sent (Bankr. Doc. 296 at 2).

---

[*] The orders cited were entered on October 24, 2012, and November 1, 2012, in response to motions filed by Houser to determine where future payments due to Appellant should be sent. The orders were not attached to Appellees' motion to dismiss; however, based on the title of the orders and quoted material from the orders, the court was able to identify them in reviewing the docket of the bankruptcy court. Appellant has not objected to Appellees' reliance on these orders or the contents of the orders to support its motion to dismiss.

**Memorandum Opinion and Order - Page 8**

As to the third factor, Appellees contend that the relief requested by Appellant would affect other third parties not before the court because Collin-G Properties, LLC ("CGP") has already obtained exit financing in the amount of $3.2 million as contemplated by the Plan, and a large portion of the funds has already been disbursed pursuant to the Plan, including a lump sum payment of $250,000 to Appellant. Appellees further assert that, contrary to Appellant's contention, the relief requested by him in the form of additional payments beyond what is contemplated by the Plan, would not only affect the portion of the Plan pertaining to Appellant, but would also affect the entire Plan because it would diminish the amount of assets available to pay creditors other than Appellant.

In his response, Appellant stipulates that he did not seek or obtain a stay and never intended to obtain a stay because:

> in the current context of the bankruptcy, and the financial information attested to and disclosed by the Joint Debtors, Rodgers' claim can only be paid out over time through the exit financing, in which the Debtor's collateral would be placed against a loan from the lending institutions, and the future operations of the Debtor's business.

Appellant's Resp. 13. Rather than offering an argument and evidence to rebut Appellees' contention and evidence that the Plan has been substantially consummated, Appellant contends that regardless of whether the Plan has been substantially consummated, the relief he seeks can be provided without impacting any third parties or modifying the Plan as confirmed. *Id.* 14. In this regard, Appellant maintains:

> All of the creditors except Rodgers approved the plan. The plan clearly discloses that the Joint Debtors, CGP and CGM, are going to make payments to Rodgers for $40,000 a year for a period of five years. There was nothing in the plan for the use of that income string, after five years, other than to revert to the use and benefit of Joint Debtors, and no third party has asserted any claim, or acted in any way and reliance on both sums being available for some purpose which they had an interest. If the Court determines, on the merits of the appeal, that the absolute priority rule was violated, then relief could be fashioned in the form of a requirement for the

**Memorandum Opinion and Order - Page 9**

> discretionary sums to be paid to Rodgers, after the arbitrary five year period, until his debt was paid in full. A provision could also be put in place to assure Rodgers that in the event the business, or the underlying real property is sold, he would be entitled to some portion of the proceeds of the sale after the payment of all secured creditors.

*Id.* Appellant asserts that Appellees have not met their burden of establishing the third factor of the equitable mootness doctrine. Specifically, Appellant contends that Appellees have not demonstrated that the relief sought by him would require the "wholesale annihilation" of the Plan or that requiring corporate Debtors CGP and CGM to continue making payments to him beyond the arbitrarily imposed five-year mark would affect third parties or the success of the Plan. Appellant contends that the success of the Plan was based on Debtors' ability to make payments to him, and that Houser testified that the five-year period for making payments under the Plan was imposed simply to protect Debtors because Houser wanted to put the debt behind him. Appellant therefore contends that the five-year payment period in the Plan was not created to protect and will not affect any third parties if Debtors are required to continue making payments to him beyond the five years required under the Plan.

Regarding the first equitable mootness factor, it is undisputed that Appellant did not obtain a stay and never intended to obtain a stay. As to the second factor, the court concludes based on the bankruptcy court's orders dated October 24, 2012, and November 1, 2012, and the findings in those orders, that the Plan has been substantially consummated. Regarding the third factor, the court is not convinced that requiring corporate Debtors CGP and CGM to make additional payments to Appellant beyond the five-year period set forth in the Plan would affect Debtors' other creditors, as the Plan states that payments by CGP to Debtors' creditors under the Plan would be funded not only by the exit financing obtained from Alliance Bank, but also from "revenue generated by CGP's business operations." R. 249.

**Memorandum Opinion and Order - Page 10**

For the same reason, the court is not convinced that the relief requested by Appellant would affect the success of the Plan. While Appellees contend that exit financing has already been obtained and funds from the financing have been used to pay Debtors' creditors, they have not adequately explained why the additional the relief requested by Appellant could not be funded by the revenue generated by CGP's business operations, if he succeeds on appeal, or why funding in this regard would diminish the total amount of assets available to pay creditors other than Appellant. Moreover, according to the orders entered by the bankruptcy court, Debtors' other creditors have already been paid in full. CGP's business operations, however, will presumably continue to generate revenue.

Accordingly, the court concludes that the instant appeal is not equitably moot and dismissal on this ground is not appropriate. *See In re Blast Energy Servs., Inc.*, 593 F.3d at 425-26 (concluding that dismissal of appeal was not equitably moot; although no stay was obtained and the plan was substantially consummated, the evidence did not support a finding that the relief sought would affect the rights of third parties or the success of the plan of reorganization). Appellees' Motion on this ground will therefore be denied.

C.   **Section 1127(b) of the Bankruptcy Code**

Section 1127(b) provides: "A proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan." 11 U.S.C. § 1127(b). Section 1127(b) therefore has been held to prohibit any modification of a confirmed plan of reorganization after substantial consummation. *In re Blast Energy Servs., Inc.*, 593 at 427 n.8. (citing *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002)). Section 1127(b), however, by its terms plainly applies only to "[a] proponent of a plan or the reorganized debtor," and Appellant is neither. The Fifth Circuit, in *In re Blast Energy Services, Incorporated*, also clarified

that section 1127(b) "does not expressly limit appellate review of plan confirmation orders; such review is limited instead by the equitable mootness doctrine," which the court has already determined should not be applied in this case. *In re Blast Energy Servs., Inc.*, 593 at 427 (quoting *In re Pac. Lumber Co.*, 584 F.3d at 240). The court concludes that this appeal and the relief requested by Appellant are not precluded by section 1127(b) of the bankruptcy code. Accordingly, dismissal of the appeal at this juncture based on section 1127(b) is not appropriate. Appellees' Motion on this ground will therefore be denied.

### III. Conclusion

For the reasons herein explained, the court **denies** Appellees' Motion to Dismiss Appeal (Doc. 5). The court directs Appellees to file their responsive brief by **September 5, 2013**, and Appellant may file a reply brief no later than **September 19, 2013.** *No extensions of time will be granted given that the parties have already had several months to prepare their respective briefs since this appeal was filed on November 27, 2012, and Appellant's Amended Opening Brief was filed January 18, 2013.*

**It is so ordered** this 22nd day of August, 2013.

Sam A. Lindsay
United States District Judge